UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:05-CR-105 |
| v. | ) | |
| | ) | |
| MALIK D. HARDIN, | ) | (VARLAN/GUYTON) |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

This case is before the Court on remand from the Court of Appeals for the Sixth Circuit [Doc. 87]. On February 22, 2011, Malik D. Hardin moved the Court for return of $2,884 in United States currency seized from him at the time of his arrest. Hardin also requested interest on this money. Two months later, Hardin moved [Doc. 82] for a hearing on his motion for the return of his property. These motions were referred [Doc. 84] to the undersigned. On May 2, 2012, the Court ruled [Doc. 85] that the property sought had been forfeited and denied both motions. The Defendant appealed to the Court of Appeals for the Sixth Circuit. The appellate court held [Doc. 87] that the undersigned failed to make factual findings on (1) whether federal agents or the Knoxville Police Department (KPD) seized the Defendant's money, and (2) whether the Defendant forfeited the money to the KPD. It determined that the failure to hold a hearing or to take evidence on the disputed factual issues was an abuse of discretion, vacated the ruling, and remanded the case for further proceedings consistent with its order. Accordingly, the Defendant's request for the return of $2,884 plus interest or for other equitable relief is again before this Court.

On June 27, 2013, the Government filed a supplemental response [Doc. 91], attaching three exhibits. It contends that the Knoxville Police Department (KPD) seized the currency when Hardin was arrested. In support of this contention, the Government provides a State of Tennessee form [Doc. 91, Exh 1] entitled Notice of Property Seizure, signed by KPD Officer Ed Kingsbury on August 30, 2005.[1] The Notice states that $2884 in currency and 8.9 grams of crack cocaine were seized from Malik Hardin on August 29, 2005. The form states that this property is subject to forfeiture because it was used or intended for use in conjunction with the sale of illegal narcotics. The Government asserts that on September 9, 2005, the KPD mailed this notice to the Defendant's address and that it was returned unclaimed on September 23, 2005. In support of this contention, the Government provides a computer printout [Doc. 91, Exh. 2] from the Tennessee Department of Safety database.

The Government also argues that although it cannot definitively show that Hardin actually received notice of the impending forfeiture of the currency, the documents related to the forfeiture show that notice of forfeiture and of his right to contest same was mailed to Hardin. The Government provides an Order of Delegation of Forfeiture [Doc. 91, Exh. 3], dated December 2, 2005, which orders that the $2884 seized from Malik Hardin be forfeited to the KPD pursuant to state law. The Order of Delegation states that notice of the seizure of the currency and a judicial forfeiture warrant were "given or was reasonably attempted to be given" to Hardin and that he did not request a hearing with regard to the property. Attached to the Order of Delegation is a Notice of Legal Rights Regarding Order of Forfeiture, instructing how to challenge the forfeiture. This Notice of Legal Rights bears the following Certificate of Service:

> Comes now the Legal Division of the Department of Safety, by its undersigned counsel, and certifies that a true and correct copy of

---

[1] Notably, Investigator Kingsbury did not check the box indicating that he served the notice on Hardin, nor did Hardin sign acknowledging his receipt of the Notice.

the above notice of legal rights and the final order of forfeiture entered by the Appeals Division in the above captioned case has been mailed, first class United States postage prepaid, to

> Knoxville Police Department
> Malik D. Hardin, c/o Blount County Justice Center

on December 2, 2005.

The Government argues this Certificate of Service shows that copies of the Order of Delegation were sent to the KPD and to Hardin at the Blount County Justice Center. It contends that assuming the United States mail functioned in the normal course of business, Hardin received notice of the forfeiture and how to contest it.

On July 26, 2013, Hardin filed a reply [Doc. 93] to the Government's supplemental response. He argues that United States Marshal Jason Tarwater seized the currency from his person and, thus, the United States was the first sovereign to have control of his property. Moreover, he argues that all law enforcement officers were present executing a federal warrant, thus any KPD officers on the premises were acting as federal agents. He contends that the Government's own exhibit, the Notice of Property Seizure, reveals that Investigator Kingsbury did not give him actual notice on August 30, 2005.[2] Moreover, he asserts that mailing a copy of the Notice to the address at which he was arrested was in fact not notice, because he was in custody at that time. Finally, he argues that the Government has provided no proof that he received actual notice of the impending forfeiture of the currency.

---

[2]The Defendant also argues that the Court does not have "jurisdiction" to reopen the proof and make factual findings on remand. The Court has already found [Doc. 94] that the Order [Doc. 87] of the Court of Appeals for the Sixth Circuit contradicts this position. The appellate court's Order remands the case for further proceedings consistent with its analysis that the District Court improperly failed to make factual findings before ruling on the Defendant's motion.

3

The Court held an evidentiary hearing on the Defendant's Motion for Return of Property on December 10, 2013. Assistant United States Attorney David C. Jennings appeared on behalf of the Government. Malik Hardin appeared and represented himself. The Court heard the presentation of evidence and the parties' arguments and then took the matter under advisement. Based upon the evidence presented, the Court recommends that Hardin's Motion for Return of Property [Doc. 81] be denied.

## I. POSITIONS OF THE PARTIES

Hardin argues that the United States must return the $2884 in currency seized from him at the time of his arrest on August 29, 2005, because (1) the seizing officers were federal agents or acting as federal agents thereby making the United States responsible for assuring that he received actual notice of the impending forfeiture of the currency and (2) the currency was forfeited in violation of his rights to due process of law because he did not receive actual notice of the forfeiture.

The Government states that the Court should not order it to pay $2884 to Hardin because (1) the currency was seized by the KPD and subsequently forfeited by the State of Tennessee and the United States cannot return what it does not have and (2) even if responsibility for the seized property can be imputed to the United States, the KPD reasonably notified the Defendant of the impending forfeiture through the United States mail and the Defendant failed to take steps to contest the forfeiture.

## II. SUMMARY OF EVIDENCE

At the December 10 evidentiary hearing, the Government presented two exhibits. The first is a collective exhibit comprised of the State of Tennessee Notice of Property Seizure

4

signed by Investigator Ed Kingsbury on August 30, 2005[3]; a two-page computer printout from the Tennessee Department of Safety database[3]; and an Order of Delegation and Forfeiture from the Tennessee Department of Safety regarding $2884 seized from Malik Hardin and dated December 2, 2005.[4] Exhibit two is an information sheet from the Blount County Sheriff's Office on Malik Dwayne Hardin, showing that he was in federal custody at the Blount County jail from August 29, 2005, to October 30, 2006.

Malik Dwayne Hardin testified in his own behalf that the currency was seized from his pocket by United States Marshal Jason Tarwater, not by the KPD. He stated that federal, not state, officers arrested him. He stated that he was not served with the Notice of Property Seizure [Exh. 1, p.1] at the time of his arrest. Hardin also denied ever receiving the Notice of Property Seizure at the Blount County jail. He stated that, instead, he got the Notice of Property Seizure from his lawyer Norman McKellar in October or November 2005 as a part of the discovery in his case. He stated that by that time, it was too late to contest the forfeiture because more than thirty days from the issuance of the Notice had already passed. Thus, he opined that he never received "proper notice" of the forfeiture of the currency.

Hardin stated that he brought to his attorney's attention that he had never signed the Notice of Property Seizure. He said that Mr. McKellar told him no grounds existed to contest the forfeiture after the thirty-day period and that it would be frivolous to file for the return of the currency at that point. Hardin also noted that the address on the Notice was the address where he was arrested but was not his residence. Moreover, he stated that when the Notice was mailed on September 9, 2005, he was in the Blount County jail.

---

[3] This is also Exhibit 1 to the Government's supplemental response.

[3] This is also Exhibit 2 to the Government's supplemental response.

[4] This is also Exhibit 3 to the Government's supplemental response.

5

Hardin acknowledged that he did receive mail while at the Blount County jail. He said that he had read the December 2, 2005 Order of Delegation and that it provided information on how to appeal the forfeiture. However, he stated that the Order of Delegation was "after the fact" and that he was never given appropriate notice to challenge the seizure initially.

On cross-examination, Hardin stated that he was staying at the Wimpole address, which is the address listed on the Notice of Property Seizure, at the time of his arrest. He knew that the currency was seized by Marshal Tarwater, and he thought it was evidence in his federal case. He stated that while he does not deny receiving the Order of Delegation, he did not recall receiving it. He agreed that he could read and that he had read about the right to appeal the forfeiture in the Order of Delegation. He agreed that he did not file such an appeal.

On redirect examination, Hardin testified that he was facing federal charges and thought that his right to reclaim his currency lay with the federal government. AUSA Jennings confirmed for the Court that Hardin was arrested on a petition for violation of his federal supervised release. AUSA Jennings stated that Investigator Kingsbury was a deputy on the Fugitive Task Force and that he was acting in a "dual capacity" at the time of Hardin's arrest.

### III. FINDINGS OF FACT

Based upon the testimony and exhibits presented at the December 10 hearing, the Court makes the following findings of fact:

On August 29, 2005, Hardin was arrested at 2624 Wimpole, Apartment 48, by United States Marshals and local law enforcement officers on the Fugitive Task Force for a violation of his federal supervised release. Deputy Marshal Jason Tarwater performed the actual arrest of Hardin and seized $2884 from his pants pocket. KPD Investigator and Task Force Officer Ed Kingsbury secured the $2884 in currency along with 8.9 grams of crack cocaine taken

6

from Hardin and removed them from the scene. Hardin was transported to the Blount County jail, where he remained in federal custody from August 29, 2005, to October 30, 2006.

The day after Hardin's arrest, August 30, 2005, Investigator Kingsbury filled out a State of Tennessee Notice of Property Seizure and Forfeiture of Conveyances for the currency and narcotics taken from Hardin. This Notice provides that the listed property has been seized pursuant to the authority of the State of Tennessee and is subject to forfeiture. The Notice states that because the property "was used or intended for use to . . . in some manner facilitate the sale or receipt of contraband[,]" the property

> will be forfeited and subject to . . . lawful disposition after thirty (30) days from notice that a forfeiture warrant has been issued unless any claimant to the seized goods shall file with the Dept. of Safety, Legal Division, . . . , a claim in writing stating his interest in the seized goods and requesting a hearing pursuant to [Tenn. Code Ann. §] 40-33-201 et seq. . . . . (Claims must be received on or before the thirtieth (30th) day; postmarked date is not acceptable. **Failure to request a hearing in a timely manner will result in your losing your interest in the above property**.) This is not a Forfeiture Warrant.

The Notice is signed by Investigator Kingsbury, but both the certification of delivery to the property owner and the acknowledgment of receipt of the Notice are blank. The Court finds that this Notice was not personally served upon Hardin by Investigator Kingsbury.

The Tennessee Department of Safety mailed a document relating to the forfeiture of the currency–the Court infers from the timing that this document was either the above described Notice or a forfeiture warrant–to Hardin on September 9, 2005. The record is devoid of evidence regarding to what address this mailing was sent.[5] In any event, Hardin did not receive the Notice in the mail while at the Blount County jail. Instead, Hardin first saw the

---

[5]The printout from the Tennessee Department of Safety database does not state what document was mailed or to which address the mailing was sent. Possible addresses were the Winpole apartment listed on the Notice, Hardin's address listed on his Blount County booking sheet [Exh. 2], or the address listed on his driver's license, if he had one.

7

Notice in October or November 2005, when he received it from his lawyer as a part of the discovery provided in his case. At that time and upon the advice of counsel, Hardin did not request a hearing or otherwise take steps to contest the forfeiture.

The currency was forfeited to the KPD on December 2, 2005. A copy of the Order of Delegation and Forfeiture was mailed to Hardin at the Blount County jail on that date. Attached to the Order of Delegation of Forfeiture is a page of instructions explaining how to request a stay of the forfeiture, to ask for reconsideration of the forfeiture, and to appeal the forfeiture to the Knox County Chancery Court. Although Hardin did not specifically recall receiving the Order of Delegation of Forfeiture while in custody at the Blount County jail, the Court finds that he received it. Hardin did not deny receiving the Order of Delegation of Forfeiture and admitted that he received his mail while housed at the jail. Additionally, Hardin acknowledged being aware of the opportunity to appeal the forfeiture after the fact. Hardin did not attempt to contest the forfeiture after receiving the Order of Delegation of Forfeiture.

## IV. ANALYSIS

Rule 41(g), formerly Rule 41(e), of the Federal Rules of Criminal Procedure provides, in pertinent part, that "[a] person aggrieved by an unlawful search and seizure of property . . . may move for the property's return . . . in the district where the property was seized." The Rule also states that "[t]he court must receive evidence on any factual issue necessary to decide the motion." "'The general rule is that seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have terminated.'" Savoy v. United States, 604 F.3d 929, 932 (6th Cir. 2010) (quoting United States v. Hess, 982 F.2d 181, 186 (6th Cir.1992)). "[T]he burden is on the moving party to show that he or she is entitled to lawful possession of the property." 3A Charles Allen Wright & Sarah N.

8

Welling, Federal Practice and Procedure §690 (4th ed. 2010); see also Savoy, 604 F.3d at 932-33. The movant must demonstrate that he or she is entitled to the property by the preponderance of the evidence. Wright & Welling, supra, § 690. With regard to notice of forfeiture of property, "the Due Process Clause . . . requires only that the Government's effort [to notify a party of forfeiture proceedings] be 'reasonably calculated' to apprise a party of the pendency of the action[.]" Dusenbery v. United States, 534 U.S. 161, 170 (2002).

In the instant case, as proven by the Notice of Property Seizure and the Order of Delegation of Forfeiture, the $2884 in currency at issue in this case was seized by and subsequently forfeited to[1] the KPD. The Government argues that it cannot return property that it does not have. Hardin argues that because the currency was removed from his pocket by a United States Marshal, it was initially in the custody of the federal Government. Hardin also contends that law enforcement arrested him on a federal warrant and, thus, Deputy Marshal Tarwater had no authority to allow the KPD to seize the currency. The Government provided no response to these arguments but states that Investigator Kingsbury was acting in a dual capacity, as both a KPD Investigator and a federal Task Force Officer, at the time of Hardin's arrest and the seizure of the currency.

The Court unequivocally finds that the currency taken from Hardin was not seized by, nor ever in the custody of, the United States. However, the Court must determine whether the United States is deemed to have been in constructive possession of the currency, because the law enforcement officers (both federal and task force agents) who arrested Hardin did so pursuant to a federal arrest warrant and because the currency taken from Hardin's person was intended to be evidence in a federal prosecution. The Court of Appeals for the Tenth Circuit has recognized that

---

[1] The Order of Delegation states that the currency was forfeited to the seizing agency pursuant to Tennessee Code Annotated section 40-33-206(c).

9

> "there are some limited circumstances under which Rule 41([g]) can be used as a vehicle to petition for the return of property seized by state authorities. Those circumstances include actual federal possession of the property forfeited by the state, constructive federal possession where the property was considered evidence in the federal prosecution, or instances where property was seized by state officials acting at the direction of federal authorities in an agency capacity."

United States v. Copeman, 458 F.3d 1070, 1071 (10th Cir. 2006) (quoting Clymore v. U.S., 161 F.3d 569, 571 (10th Cir. 1999)). Hardin's position relates to the third circumstance, contending that Investigator Kingsbury was essentially an agent of the federal officers because he seized the currency at the direction of and in conjunction with the United States Marshals who arrested Hardin. The Court also observes that the currency was intended to be evidence in the Defendant's subsequent federal case, a fact that suggests constructive possession under the Tenth Circuit rubric.

Initially, the Court questions whether the Court of Appeals for the Sixth Circuit recognizes a constructive possession theory for the return of property seized in a criminal case. Two cases from this circuit deem the fact that the United States never had custody of property that was seized and forfeited by the state to require dismissal of a Rule 41(g) motion for the return of property. United States v. Oguaju, 107 F. App'x 541, 542-43 (6th Cir. 2004) (affirming dismissal of motion for return of property when the property was "seized and forfeited by the State of Michigan[,]" the defendant had "adequate notice of the forfeiture proceedings[,]" and the property was never "in possession of a federal government agent or agency"); United States v. Obi, 100 F. App'x 498, 499 (6th Cir. 2004) (denying motion for return of property because the record is devoid of evidence the property was ever in the possession of the federal government). These cases appear to be in line with the Government's argument that it cannot return property that it never had.

Citing to the Tenth Circuit in Copeman, the United States District Court for the Eastern District of Michigan recognized that a federal agent can be in either actual or constructive possession of property seized in a criminal case. United States v. Hayden, No. 99–20011, 2009 WL 3872146, *2 (E.D. Mich. Nov. 18, 2009). The district court construed the *pro se* defendant's motion for return of property leniently. Id. However, the court did not require the United States to return the property (two horses and a horse trailer) seized by a task force agent and subsequently forfeited to Michigan because the property was never in federal custody and was not used in the federal prosecution. Id. Additionally, the court found the doctrine of laches barred Hayden's claim because he waited ten years to seek the return of live animals. Id. at 3.

Even if the Court applies the Tenth Circuit's rubric in the instant case, "the fact that federal and state authorities are working pursuant to a joint task force does not necessarily mean that there was a federal authorization or an agency relationship between federal and state authorities." United States v. Williams, No. 1:07–CR–06, 2010 WL 1752530, *1 (W.D. Mich. Apr. 27, 2010. This is because joint task force officers are deemed to be working "*with* the federal government, not *for* the federal government." Id. (emphasis added). In Williams, the defendant convicted of a drug conspiracy moved for the return of property pursuant to Rule 41(g). Id. The district court held that the government was not in constructive possession of $266 in currency, certain electronics, and other personal property seized from the defendant's home. Id. at *1-2. The court found the following facts to support this finding: The seizure arose from a joint federal and state investigation into drug trafficking; the state task force agents worked as equal and independent partners in the investigation, not merely as FBI agents; the property was seized pursuant to a state search warrant obtained by a local detective; the property was never in the custody of federal agents; state officers seized the property in order to forfeit it; and the FBI agent assisting with the search did not seize any evidence. Id. at 2.

11

Comparing the facts relevant in Williams to the instant case reveals this to be a close case under the Tenth Circuit's rubric. First, the seizure was the result of an arrest of Hardin pursuant to an arrest warrant for his violation of federal supervised release. While the federal arrest favors a finding of constructive possession, the Court observes that the arrest was not for narcotics trafficking and the evidence of same seized from Hardin's person was seized by Investigator Kingsbury, not the Marshals. This supports a finding that the Government is not in constructive possession of the currency. Moreover, unlike in Williams, evidence presented at the suppression hearing on March 17, 2006 [see Doc. 34, Report and Recommendation, p.3], reveals that Investigator Kingsbury was the one who investigated Hardin's whereabouts and learned from a confidential informant that Hardin was staying at an apartment on Wimpole Avenue. This evidence of independent investigation by Investigator Kingsbury also weighs against constructive possession.

Like in Williams, the instant currency was never in the custody of federal agents.[2] Also, it appears that Investigator Kingsbury seized the currency so that it would be forfeited to the KPD, although the Court has no information regarding whether this was pursuant to an agreement, either formal or informal, with federal authorities. These two factors argue against constructive possession. Finally, the United States prosecuted Hardin for possession of crack cocaine with intent to distribute for the narcotics found on his person at the time of his arrest, and the currency in question would have been evidence in that prosecution. This factor weighs heavily in favor of a finding of constructive possession. Weighing all of these facts, the Court finds that the United States was *arguably* in constructive possession of the currency seized from Hardin at the time of his arrest. Although it is not clear that constructive possession would be

---

[2] The Court does not find the possibility that Deputy United States Marshal Tarwater may have taken the currency from Hardin's pocket before giving it to Investigator Kingsbury to be controlling.

12

recognized in this Circuit, nor is it clear that Hardin could demonstrate by a preponderance of the evidence that the United States constructively possesses the currency on the facts of this case, the Court will briefly examine the sufficiency of the notice with which Hardin was provided.

If the Government is in constructive possession of the currency, the burden shifts to the United States to prove that Hardin was provided proper notice of the state's intent to forfeit the currency. See Ismail v. United States, No. 89-1717, 1990 WL 20850 897, *1 (6th Cir. Mar. 7, 1990) (concluding that government had burden of proving that scales seized from defendant at the time of his arrest were contraband and, thus, properly destroyed). As set out above, notice of a forfeiture is proper if it is "'reasonably calculated, under all the circumstances'" to notify the defendant of the impending forfeiture. Dusenbery, 534 U.S. at 169 (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). "The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." Mullane, 339 U.S. at 315. "The adequacy of notice is measured at the time the notice was sent." United States v. Latham, 54 F. App'x 441, 444 (6th Cir. 2002).

Hardin appears to fault the Government for not assuring that he received "actual notice" of the impending forfeiture. Actual notice, however, is not required. Dusenbery, 534 U.S. at 171. Instead, the Government must show a reasonable attempt to provide actual notice. Id. at 170-71. In Dusenbery, the Supreme Court affirmed that notice sent via certified mail to the federal prison at which the defendant was incarcerated and which had procedures in place for logging prisoner mail and delivering it to prisoners was reasonably calculated to provide the Defendant with notice. Id. at 168-71.

Tennessee law requires the seizing officer to provide the person who was in possession of the seized property with "a receipt titled a "Notice of Seizure[,]" providing certain information including the procedure by which the person may seek to recover the property and the

13

consequences of failing to comply with that procedure. Tenn. Code Ann. §40-33-203(c). Here, the Notice of Property Seizure [Exh. 1, p. 1] was not given to Hardin at the time of his arrest. The Government claims that this notice was mailed to Hardin at the Wimpole address on September 9, 2005, and returned to sender on September 23, 2005. [See Exh. 1, p.2]

> Under most circumstances, notice sent by ordinary mail is sufficient to discharge the government's due process obligations. When the government sends notice by mail, however, the proper inquiry is not simply whether the government sent the notice, but whether it acted reasonably under all the circumstances in relying on the mail as a means to apprise the interested party of the pending action.

Armendariz-Mata v. U.S. Department of Justice, DEA, 82 F.3d 679, 683 (5th Cir. 1996). In Armendariz-Mata, the Court of Appeals for the Fifth Circuit held that notice mailed to the defendant's residence was insufficient, because the defendant was in jail. Id., see also Robinson v. Hanrahan, 409 U.S. 38, 40 (1972) (holding notice inadequate when "the State knew that the appellant was not at the address to which the notice was mailed and, moreover, knew also that the appellant could not get to that address since he was at that very time confined in the Cook County jail"); DePiero v. City of Macedonia, 190 F.3d 770, 788 (6th Cir. 1999) (finding notice by first class mail to residence sufficient when individual was not incarcerated).

In the instant case, the Court finds that attempted notification by mail to the address at which Hardin was arrested and had recently been living was not reasonably calculated to provide Hardin with actual notice, when Investigator Kingsbury, a federal Fugitive Task Force Officer, knew that Hardin had been arrested by the United States Marshals and was likely in custody. Thus, if the United States is deemed to be in constructive possession of the currency, it appears that the initial notice to Hardin of the forfeiture was not reasonably calculated to notify him of the impending forfeiture. However, this is not the end of the analysis, because the Court finds

14

that Hardin subsequently did receive notice of the forfeiture both through his attorney and by the Order of Delegation and Forfeiture.

Ultimately, the Court finds that the instant motion for return of property must fail because Hardin had an adequate legal remedy to seek the return of his currency but he failed to pursue it. Hardin could have contested the forfeiture by filing a written claim with and requesting a hearing from the Department of Safety, as detailed in the Notice of Property Seizure, when he received actual notice that forfeiture proceedings were afoot in October or November 2005. At this time, the currency had not been forfeited. Hardin also could have contested the forfeiture after receiving the Order of Delegation of Forfeiture, which was issued on December 2, 2005, and mailed to him at the Blount County jail. Hardin admits that he took neither of these actions.

The return of property under Rule 41(g), which is an equitable remedy, is not available to an individual who fails to avail him or herself of forfeiture proceedings "because '[u]nder standard equity doctrine, where there is an adequate remedy at law it must be pursued.'" Brown v. United States, 692 F.3d 550, 553 (6th Cir. 2012) (quoting Shaw v. United States, 891 F.2d 602, 603 (6th Cir. 1989)), cert. denied, 133 S. Ct. 956 (2013); see also United States v. Poe, No. 99-5089, 2000 WL 190068, *3 (6th Cir. Feb. 7, 2000) (observing that despite the defendant's challenge to the sufficiency of the notice used, he had actual notice of the forfeiture proceedings). The Court finds that Hardin had an adequate legal remedy for the return of the currency in the State forfeiture proceedings.

Finally, the Court finds that if the District Judge disagrees that Hardin had notice of the state forfeiture proceedings and failed to act to preserve the property, the appropriate

15

remedy is not to order the Government to reimburse Hardin.[7]  While Rule 41(g) allows a criminal defendant to seek the return of property seized by federal agents,

> [Rule 41(g)] does not say what happens when the property in dispute, as here, has been lost or destroyed. Ordonez v. United States, 680 F.3d 1135, 1137–38 (9th Cir. 2012). Nor does it expressly authorize a defendant to sue the government for compensation in such circumstances. Id. at 1138, 1140 (holding that "Rule 41(g) contains no express and unequivocal waiver of the government's sovereign immunity"). For this reason, at least nine circuits "have held that sovereign immunity bars an award of money damages against the government on a Rule 41(g) motion where the property cannot be returned." Id. at 1138 & n. 2 (collecting cases).

United States v. Droganes, 728 F.3d 580, 589 (6th Cir. 2013), cert. denied, 132 U.S. 2287 (2014). In such cases, the appropriate way for the defendant to seek relief is to file a case under the Federal Tort Claims Act, 28 U.S.C. § 1346, in which Congress has authorized "a limited waiver of sovereign immunity for lost or destroyed property claims." Id. at 890. Accordingly, if the District Court determines that the Government constructively possesses the currency and that Hardin received insufficient notice of the state forfeiture proceedings, the Court recommends that Hardin be directed to pursue relief under the Federal Torts Claims Act.

## V. CONCLUSION

After carefully considering the motion, response, supplemental briefs, testimony, exhibits, and relevant legal authorities, the Court concludes the United States cannot return the $2884 in United States currency to Hardin because it has been forfeited by the State of Tennessee and is not, nor was it ever, in the possession of the United States. Moreover, the Court finds that even if the United States is deemed to be in constructive possession of the

---

[7]Hardin argues that the Government should pay him the $2884 plus interest and then seek reimbursement from the state under the All Writs Act.

currency in question, equitable considerations prevent the Court from finding the United States liable for the forfeited currency because Hardin had, was aware of, and did not pursue an adequate legal remedy for the return of the currency in the State forfeiture proceedings. For the reasons set forth herein, it is **RECOMMENDED** that the Defendant's Motion for Return of Property and /or Any Equitable Relief Available [**Doc. 81**] be **DENIED**.[8]

                                            Respectfully submitted,

                                            _/s/ Bruce Guyton_
                                            United States Magistrate Judge

---

[8] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).